Parsons, C. J.
In this action the trustees have submitted to an examination on oath, and on the facts severally disclosed by them, have prayed to be discharged.
Quint has very clearly shown that he had no goods, effects, or credits of Estes in his hand at the time he was summoned, and he must be discharged.
*256 Whether Merrill is entitled to a discharge, deserves a further consideration. It appears from his examination, that between him and Estes there have been two several transactions, respecting the transfer of logs from Estes to Merrill. On the first, Estes still remained a debtor to Merrill in the sum of 697 dollars, 99 cents; of this sum, 397 dollars, 99 cents, was a balance due Merrill for overpayment on logs purchased, and the remaining 300 dollars is the amount of two notes, which are on interest from October 2d, 1807, and [*331 ] were not paid June 8th, * 1808, when he was summoned as a trustee, nor at any time since. On this first transaction there is no question, as Merrill is a large creditor of Estes.
The second transaction involves the interest of Quint. It appears that Estes owned a farm in Bethel, which he proposed to sell to Quint, who was to make part of the payment in certain logs of which he was the owner. By agreement between Estes and Quint, one Holland and Merrill, the other trustee, appraised the farm at 1,200 dollars, and Quiñis logs at 700 dollars. When the parties met to execute the conveyance of the farm, Merrill being also present, it was known that the farm was under a mortgage to one Powers for about 750 dollars, and it was verbally agreed that Quint should pay Estes 500 dollars in part, and that Estes should sell the logs of Quint to Merrill, who, in consideration thereof, undertook also verbally to take up the mortgage to Powers, and to indemnify Estes against it. • Quint then received the deed of conveyance, containing the usual covenants of warranty, paid Estes 500 dollars, and agreed to deliver the logs to Merrill, who, after he was summoned, discharged Powers’s mortgage, partly in cash, partly in goods, and the remainder by his note, amounting in the whole to about 750 dollars, which exceeds the price at which Merrill had agreed with Estes to take the logs.
On these facts the plaintiff has argued that Merrill held credits of Estes in his hands, when he was summoned; because his contract to redeem the mortgage was with Estes, and not with Powers; and because this contract related to an interest in lands, and was within the statute of frauds (1), and so could not be enforced either by Powers, or by Estes, who only could compel Merrill to pay him the agreed price of the logs.
Upon considering this point, we are satisfied that, by reason of this last transaction, Merrill cannot be adjudged the [ * 332 ] trustee of Estes. For if the plaintiff is * right, that Estes had no remedy against Merrill on his agreement to take up the mortgage, but only for the price of the logs hen he *257 could recover of Merrill only 700 dollars, this being the sum at which Merrill had agreed to take the logs. But Merrill might retain for his own debt of 697 dollars, 99 cents, which, with the interest, exceeded the price of the logs.
We have viewed this subject in another light. It seems very clear that there was no privity of contract between Powers and Merrill, and that Merrill engaging with Estes, as a consideration for the logs, to take up Potvers’s mortgage, is not a contract or sale of lands, or of any interest in or concerning the same, so as to be within the statute of frauds. The inference is that if Merrill had not extinguished the mortgage, then (no attachment intervening) he would have been answerable to Estes for damages equivalent to the value of the mortgage. If therefore Quint, the other trustee, had not been a party to, or interested in the sale of these logs, it might be reasonable to decide that Merrill had credits of Estes, equal to the difference between the mortgage, and the debt due from Estes to himself. But Quint appears to be a party to this transaction. He was to give Estes 1,200 dollars for the farm unencumbered with the mortgage. He paid the purchase money, deducting the value of his logs. And it is not to be presumed, that Quint would have delivered the logs, without some assurance that their value should be applied to extinguish the encumbrance. Accordingly, when the contract for the farm is executed, it must be considered as agreed by Estes, Merrill and Quint, as they were all present, that Quint would part with the logs, and so complete the payment for the farm, on Estes’s agreeing that he should deliver the logs to Merrill on his undertaking to remove the encumbrance. And this agreement must be considered as executed on the part of Quint, when he, in pursuance of it, delivered the logs to Merrill. Quint had therefore an interest in * this contract, and Merrill must [ * 333 ] be considered in equity, not only as the debtor of Estes, but also as the agent of Quint to apply the value of the logs to remove the encumbrance.
On this view of the subject it would be unreasonable to adjudge Merrill to be trustee of Estes to the value of the mortgage, if the former has in fact executed the trust by paying off the mortgage for the benefit of Quint.
But it is objected that there was no written agreement binding on the parties, and upon which Quint could have a remedy against Merrill, if he had refused to pay off Powers’s mortgage.
So far as this objection would apply to Estes, it would prevail, because, by the attachment, Owen is entitled to all the benefits resulting from the contract exclusively to his debtor, in whose place he stands; but not to any benefit which may result to a third per *258 son, as Quint, which the debtor himself could not control. Now Estes could not control Merrill from paying off the mortgage for the benefit of Quint, who had parted with his logs for that purpose; and if Merrill had paid off the mortgage against the express direction of Estes, the latter could have no remedy against Merrill on the sale of the logs.
Orr, for the plaintiff.
Mellen, for the trustees.
If Estes had satisfied the mortgage in some other way, or if Mer rill had broken his contract with him, by refusing to satisfy the mortgage, then the case would have assumed a new complexion, and Merrill must have been adjudged the trustee of Estes. But as Merrill has secured to Quint his interest in the contract, by honestly executing it, although after he was summoned, he ought to be discharged. For as Estes could not lawfully, by any interference, prevent Merrill from taking up the mortgage for the benefit of Quint, so neither can the creditor in consequence of the operation of his attachment.

Trustees discharged.

 1783, c. 37. § 2.