## BENJAMIN WELD *versus* CUSHING NICHOLS.

**By an indenture between the plaintiff and defendant, the plaintiff agreed to convey to the defendant a house-lot in Boston, free from incumbrances, and the defendant agreed to indemnify the plaintiff against all claims in consequence of the wall of the house on the adjoining lot being set partly on the plaintiff's lot. The plaintiff subsequently conveyed the lot to the defendant, and at his request cancelled the indenture and certified upon it that it had been fulfilled on the part of the defendant; and thereupon the defendant promised verbally, that if any claim should be made and enforced against the plaintiff respecting the wall, he would indemnify the plaintiff against all sums that he should be so obliged to pay, and all costs and expenses. The defendant made use of the wall, and the adjoining owner sued the plaintiff on that account and recovered judgment. It was *held*, that the defendant's parol promise was not a contract concerning an interest in land, within the meaning of the statute of frauds.**

*Held*, **that such parol promise was not a collateral promise to pay the debt of another, within the meaning of the statute of frauds, but a direct promise to the plaintiff.**

**The plaintiff's liability to pay for the wall was *held* to be a mere personal liability, and therefore not repugnant to the plaintiff's covenant that the land was free from incumbrances.**

**The cancelling of the written agreement, at the defendant's request, was *held* to be a sufficient consideration for the new promise.**

**In an action on a promise of indemnity against the claim of a third person, the record of a judgment recovered by such third person upon such claim, is admissible in evidence in support of the action.**

ASSUMPSIT on a parol agreement of indemnity.

At the trial, before *Wilde* J., it appeared that by an indenture between the parties, dated December 4, 1829, the plaintiff agreed to sell, and the defendant to purchase, a parcel of land in Portland street in Boston, on terms specified in the indenture. The plaintiff stipulates that he will convey the

and, on June 1, 1830, by a warranty deed, free from all in-
cumbrances.    The instrument contained this clause : " And
whereas the brick walls of the buildings adjoining said land on
each side may stand some inches on said land, said Weld is in
no way to be liable either to said Nichols or to the owners of
said brick walls in consequence thereof, but is to be indemni-
fied by said Nichols from all claims on this account."

The division wall on one side of the land had been erected
by one Luther, with the consent of Weld, partly on Weld's
land.

George Gay, Esquire, being called by the plaintiff, testified
that in the spring of 1830, the plaintiff and defendant came to
his office to get a deed made of the land above mentioned.
The defendant was about to obtain money upon a mortgage of
the land, and desired to have the indenture cancelled, for the
purpose, as the witness supposed, of satisfying the person
who was to take the mortgage.    The plaintiff declined cancel-
ling it, on account of the provision above recited.    The plain-
tiff and the defendant both seemed to think there was no legal
claim against the plaintiff, in respect to the walls, and it was
thereupon agreed by the defendant, in consideration that the
plaintiff would cancel the written agreement, that if any claim
should at any time thereafter be made and enforced against the
plaintiff, concerning the walls, the defendant would pay the
plaintiff any and all sums which the plaintiff should be so
obliged to pay, and all costs and expenses that might arise in
any way by reason thereof.    Whereupon the plaintiff con-
sented, and the written agreement was cancelled, and the deed
of the land was given.    In 1831 Luther instituted a suit
against the plaintiff respecting the wall.    While that suit was
pending in the Common Pleas the witness saw Nichols in the
office of Weld's counsel, as if consulting and preparing for
defence.    After the verdict in the Common Pleas, Weld de-
sired the witness to send for Nichols and informed him of the
amount, including costs and expenses, that he might pay it.
The witness did so, and Nichols came to his office, and said
he expected to pay what was right, but that the verdict was
high and he would consult Mr. Parker.    The case was car-
ried by appeal, to the Supreme Court, as the witness under-

stood, at the desire of Nichols. The reason for sending for Nichols was to ascertain whether he would abide by the verdict, or appeal, as it was considered that he was the party interested.

On May 12, 1830, the time of cancelling the indenture, the plaintiff certified upon it, that the defendant "has this day performed and done all things relating to the above agreement by him to be performed and done, and has paid the money according to the above agreement."

S. D. Ward, Esquire, testified, that he was counsel for Luther in the suit against Weld, and that Nichols was in court at the hearings ; that there were many counts in the writ, and one, he believed, was upon an express promise ; that the judge ruled that no express promise was proved, and put the case to the jury upon the implied promise.

The amount of the judgment of Luther against Weld, for damages and costs, was $430·89 ; and the counsel fees and expenses were $117·64 ; making together $548·53. On March 27, 1834, Weld made a demand on the defendant to pay this sum.

It was testified by Luther, that Nichols had made use of the walls ; that Weld never denied that the walls ought to be paid for, but always said that Nichols ought to pay for them because he used them and it was so understood.

The plaintiff proved and put into the case the record of the judgment and execution receipted, in the suit of Luther against Weld, and a bill of the fees paid by Weld to his counsel in the defence.

The defendant objected to the admission of the evidence produced by the plaintiff to prove the promise, on the ground that the promise was within the statute of frauds.

The judge instructed the jury, that if they believed the testimony of Mr. Gay, the cancelling of the indenture was a sufficient consideration for the promise declared on ; that the bargain did not affect the title to real estate, and that the statute of frauds did not apply ; that if Nichols was present at the trial of the action against Weld, and was called on to determine whether an appeal should be claimed, and in fact knew that the case was pending in the appellate court, he would be

answerable for all the costs and expenses, but if the jury doubted as to his knowing and acquiescing in the appeal, then the expenses after the appeal should not be allowed.

The jury found a verdict for the plaintiff for $574·86, the whole amount of damages, costs and expenses, with interest from the time of the demand.

If the instructions were wrong, or the parol evidence was not admissible, or the plaintiff was not entitled to recover, the verdict was to be set aside and a new trial granted ; or the verdict was to be reduced, if such should be the judgment of the Court.

*S. D. Parker*, for the defendant. The contract declared on is within the statute of frauds, because it relates to the sale of land ; *Scorell* v. *Boxall*, 1 Younge & Jerv. 396 ; *Teall* v. *Auty*, 4 Moore, 546 ; *Smith* v. *Surman*, 9 Barn. & Cressw. 561 ; *Evans* v. *Roberts*, 5 Barn. & Cressw. 829 ; *Falmouth* v. *Thomas*, 1 Crompt. & Mees 89 ; *Kidder* v. *Hunt*, 1 Pick. 328 ; because it is a promise to answer for the debt or misdoing of another ; *Kirkham* v. *Marter*, 2 Barn. & Ald. 613 ; and because it is not to be performed within a year.

The testimony of Gay was inadmissible, inasmuch as there was a contract in writing, and this testimony contradicts the plaintiff's agreement therein to convey the land free from incumbrances, and his covenant in his subsequent deed, that the land conveyed was free from incumbrances, and his written release indorsed upon the indenture.

The parol promise is without consideration. The discharge of a contract upon full performance cannot be a consideration for a new promise. In the action of Luther against Weld there was a count upon an express promise, and Luther may have prevailed on an express promise, and in such case Nichols is not answerable over to Weld.

The record of the judgment in Luther's action was *res inter alios*, and inadmissible in evidence. Nichols was neither party nor privy.

The rule of damages was wrong, in allowing counsel fees.

*Simmons*, for the plaintiff, cited *Prov. St.* 4 *Will. & M. c.* 1. in Province Laws, edit. 1759, *p.* 1, allowing a person, building with brick or stone, in Boston, to set half his parti-

*March 3d.*

Weld
v.
Nichols.

tion wall in his neighbor's ground, and requiring his neighbor, when he shall build, to pay for one half of the wall, so far as it shall be built against.    As to the statute of frauds, he cited Roberts on Frauds, 188 ; *Boyd's Lessee* v. *Graves*, 4 Wheat. 513, 517 ; *Campbell* v. *M'Clenachan*, 6 Serg. & Rawle, 171 ; *Hart* v. *Kucher*, 5 Serg. & Rawle, 1 ; *Goodman* v *Chase*, 1 Barn. & Ald. 297 ; Chitty on Contr. 203 ; *Moore* v. *Fox*, 10 Johns. R. 244 ; *Perley* v. *Spring*, 12 Mass. R. 297 ; as to the consideration for the new promise, *Stebbins* v. *Smith*, 4 Pick. 97 ; *Sumner* v. *Williams*, 8 Mass. R. 200 ; *Forster* v. *Fuller*, 6 Mass. R. 58 ; *Mills* v. *Wyman*, 3 Pick. 207 ; *Nelson* v. *Milford*, 7 Pick. 18 ; *Train* v. *Gold*, 5 Pick. 380 ; *Phelps* v. *Townsend*, 8 Pick. 392 ; *Peirce* v. *Woodward*, 6 Pick. 206.

*March 14th.*      SHAW C. J. delivered the opinion of the Court.    The first exception taken in the present case, and the one mainly relied upon in argument is, that the promise or agreement upon which the plaintiff founds his claim, could not be proved by parol evidence, and that the admission of the parol evidence therefore was wrong. `

The clause in the statute of frauds, *St.* 1783, *c.* 37, § 2, on which the exception is founded, provides " that no action shall be maintained upon any contract or sale of lands, or any interest in or concerning the same, unless the agreement, &c. shall be in writing."    The agreement upon which the suit is founded is this ; the plaintiff had entered into an agreement with the defendant, in writing, to sell him a lot of land, and to make a certain title, within a time limited, &c.    The plaintiff after wards, in pursuance of the contract, conveyed the land to the defendant, and gave a certificate, that the terms of that contract had been complied with ; thereupon the defendant promised the plaintiff, that if any claim should thereafter be made against him personally, respecting certain walls built on the lot, by adjacent proprietors, and enforced, the defendant would pay the plaintiff all sums that he should be so obliged to pay, and all costs and expenses.    This was not a contract concerning any interest in land, within the meaning of the statute.    It was the ordinary case of a promise to indemnify the plaintiff against a mere personal liability.    Had Weld's

ability to pay for the walls, been a charge on the land, it would have devolved on the defendant, without such promise, as a purchaser.

It has been held under this statute, that a contract with a mortgager of lands, to pay off a prior incumbrance and thus discharge the land from a lien, is not within this statute; which is a case somewhat stronger than the present. *Owen v. Estes,* 5 Mass. R. 330.

This was not a collateral promise to pay Weld's debt to Luther, which would have required evidence in writing to enable Luther to maintain an action upon it; it was a direct promise to Weld, to indemnify him against the claim of Luther.

Another exception is, that it was contrary to Weld's own deed to the defendant, warranting the land as free of all incumbrances. But this we think is answered by the obvious consideration, that the liability of the plaintiff to pay for the walls, was not a charge upon the land, but a mere personal liability, and therefore it was not in any respect repugnant to the covenant.

The cancelling and delivering up the former agreement at the defendant's request, although the promise of indemnity therein contained was in different terms, was still a good consideration for the promise declared on.

It was objected that the record of the suit against the plaintiff, ought not to have been admitted, first, because the case was *res inter alios acta,* and secondly, because the suit was brought, among other things, upon an express promise of the plaintiff to Luther, and although there was evidence tending to show that the recovery was upon an implied and not on the express promise, still it did not appear from the record, that damages were not given on the count declaring upon an express promise.

But we are of opinion, that the objection cannot be supported upon either ground.

In a promise to indemnify, especially against a demand which the parties think is not well founded, the party indemnified is bound in good faith, not to yield to the demand, until compelled by law to do so. He is therefore bound to show

that he has paid under a judgment, and for this purpose the judgment is the proper evidence. It is like the ordinary case of one suing on a covenant of seisin or warranty, who must ordinarily produce the judgment by which he has been evicted. If the defendant has had due notice of the suit, and full means to aid in the defence, such judgment will in general be conclusive of the existence of the claim, against which the covenant was made. The covenantee, or party indemnified, may, if he please, yield to the claim, and pay without a judgment; but he does it at the risk of being obliged, in his suit for indemnity, to prove the existence and truth of such claim.

Nor is there more weight in the other part of the objection, that the recovery might have been had upon the plaintiff's promise. Had there been proof of any such express promise, made by the plaintiff after the promise of indemnity made by the defendant, it might have been easily shown; but there was no evidence of it, the thing is intrinsically improbable, and therefore we suppose no such promise is pretended. Then the defendant's promise to indemnify the plaintiff against the claim for the walls, was general, to indemnify him against his liability, whether that liability arose from a promise express or implied. It was in his power to acquaint himself with the grounds, upon which that liability rested, and to withhold his promise of indemnity, until he was satisfied. Whether the plaintiff misled him, by any misrepresentation, or wilful suppression, was fully and properly left to the jury, upon the evidence, who, in finding for the plaintiff, have negatived any such imputation.

*Judgment according to the verdict*